**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DISH TECHNOLOGIES L.L.C. and SLING TV L.L.C., | |
| *Plaintiffs,* | C.A. No. _____ |
| v. | **JURY TRIAL DEMANDED** |
| FUBOTV MEDIA INC., | |
| *Defendant.* | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs DISH Technologies L.L.C. and Sling TV L.L.C. (collectively, "DISH") allege against Defendant fuboTV Media Inc. ("fuboTV" or "Defendant") as follows:

### PRELIMINARY STATEMENT

1.      This is a case of willful infringement of DISH's valuable patents related to streaming content to end-user devices.  Defendant knowingly infringes those patents and uses DISH's technology to stream through an application and a variety of gaming and television devices.  DISH seeks to recover damages for Defendant's willful infringement and to obtain injunctive relief to preclude Defendant's further infringement of DISH's intellectual property.

### PARTIES

2.      Plaintiff DISH Technologies L.L.C. is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.  It provides innovation and technology services and products to, among others, the DISH Network® satellite pay TV service operated by DISH Network L.L.C. and the Sling TV® streaming pay TV service operated by Sling TV L.L.C.

3.      Plaintiff Sling TV L.L.C. is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.  It operates the Sling TV® streaming pay TV service.

4.      On information and belief, Defendant fuboTV is a corporation existing under the laws of the State of Delaware, with its principal place of business at 1330 Sixth Avenue, New York, New York 10019.  On information and belief, fuboTV operates online streaming services through its fuboTV Application and fuboTV Server(s). The Defendant has appointed Corporation Service Company at 251 Little Falls Drive, Wilmington DE 19808 as its agent for service of process.

## JURISDICTION AND VENUE

5.      DISH asserts a claim for patent infringement against fuboTV arising under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over fuboTV for at least the following reasons: (1) fuboTV is incorporated in Delaware; (2) fuboTV has availed itself of the benefits of this District by filing counterclaims in C.A. No. 21-725-CFC (D. Del.); (3) fuboTV has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District; (4) fuboTV regularly does business or solicits business in this District; (5) fuboTV engages in other persistent courses of conduct and derives substantial revenue by its offering of infringing products and services and providing infringing products and services in this District; and (6) fuboTV has purposefully established substantial, systematic, and continuous contacts with this District and should reasonably expect to be subject to suit here by its offering of infringing products and services and providing infringing products and services in this District.

7.      Venue is proper in the District of Delaware under at least 28 U.S.C. §§ 1391(b), (c) and/or 1400(b) at least because fuboTV is incorporated in Delaware and has filed counterclaims in this District.   Additionally, on information and belief, fuboTV has committed acts of infringement in the State of Delaware, including but not limited to offering products or services that infringe one or more of DISH's asserted patents to customers located in Delaware and/or for use in Delaware.

## THE ABR PATENTS

8.      On March 16, 2021, the United States Patent and Trademark Office (the "PTO") duly and lawfully issued United States Patent No. 10,951,680 ("the '680 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."   A true and correct copy of the '680 Patent is attached as Exhibit A.   Subject to the exclusive license referenced below, all rights, title, and interest in and to the '680 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '680 Patent.

9.      On June 13, 2023, the PTO duly and lawfully issued United States Patent No. 11,677,798 ("the '798 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."   A true and correct copy of the '798 Patent is attached as Exhibit B.   Subject to the exclusive license referenced below, all rights, title, and interest in and to the '798 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '798 Patent.

10.     On August 2, 2016, the PTO duly and lawfully issued United States Patent No. 9,407,564 ("the '564 Patent"), entitled "Apparatus, system, and method for adaptive-rate shifting of streaming content."   A true and correct copy of the '564 Patent is attached as Exhibit C.   Subject to the exclusive license referenced below, all rights, title, and interest in and to the '564 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '564 Patent.

11.     On November 5, 2019, the PTO duly and lawfully issued United States Patent No. 10,469,554 ("the '554 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."  A true and correct copy of the '554 Patent is attached as Exhibit D.  Subject to the exclusive license referenced below, all rights, title, and interest in and to the '554 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '554 Patent.

12.     On November 5, 2019, the PTO duly and lawfully issued United States Patent No. 10,469,555 ("the '555 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."  A true and correct copy of the '555 Patent is attached as Exhibit E.  Subject to the exclusive license referenced below, all rights, title, and interest in and to the '555 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '555 Patent.

13.     On October 21, 2014, the PTO duly and lawfully issued United States Patent No. 8,868,772 ("the '772 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."  A true and correct copy of the '772 Patent is attached as Exhibit F.  Subject to the exclusive license referenced below, all rights, title, and interest in and to the '772 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '772 Patent.

14.     On October 11, 2022, the PTO duly and lawfully issued United States Patent No. 11,470,138 ("the '138 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."  A true and correct copy of the '138 Patent is attached as Exhibit G.  Subject to the exclusive license referenced below, all rights, title, and interest in and to the '138 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '138 Patent.

15.     On August 25, 2020, the PTO duly and lawfully issued United States Patent No. 10,757,156 ("the '156 Patent"), entitled "Apparatus, system, and method for adaptive-rate shifting of streaming content."  A true and correct copy of the '156 Patent is attached as Exhibit H.  Subject

to the exclusive license referenced below, all rights, title, and interest in and to the '156 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '156 Patent.

16.     DISH Technologies has entered into an exclusive license with Sling TV L.L.C. granting substantial rights in the above-identified patents to Sling TV L.L.C., including the right to sue thereon.

17.     Certain of Sling TV L.L.C.'s products and services practice one or more of the Asserted Patents.  In compliance with 35 U.S.C. § 287(a), Sling TV L.L.C. marks its practicing products and requires its sublicensees to do the same.

18.     Additionally, certain products and services offered by DISH Technologies' affiliate DISH Network L.L.C. ("DISH Network") also practice the Asserted Patents.  DISH Network marks its practicing products and maintains a webpage identifying a listing of patents applicable to DISH Network's products.   See Intellectual Property, DISH NETWORK, https://www.dish.com/ip/ (last visited Aug. 22, 2023).

19.     The claimed inventions in these patents are directed to various novel aspects and improvements to adaptive bitrate streaming ("ABR") technology.  The '680, '798, '564, '554, '555, '772, '138, and '156 Patents (collectively, "the ABR Patents" or the "Asserted Patents") are currently in full force and effect.  Each of the ABR Patents issued from U.S. Patent Application No. 11/116,783 or patent applications that are continuations or continuations-in-part of U.S. Patent Application No. 11/116,783.

## BACKGROUND OF THE DISPUTE

### MOVE IS A PIONEER OF ADAPTIVE BITRATE TECHNOLOGY

20.     Drew Major founded MOVE Networks, Inc. ("MOVE") in 2003 in American Fork, Utah (under the name XLon, until 2006).   MOVE invented HTTP-based Adaptive Bitrate

Streaming to improve the quality of streamed video content over the Internet, and was the original owner of the ABR Patents. While at MOVE, inventors David Brueck, Mark Hurst, and Drew Major (collectively, "the ABR Inventors") observed that the Internet was fast becoming a preferred method for distributing live and recorded video to individuals. However, content delivery over the Internet at the time was notoriously unreliable, expensive and inferior in quality compared to cable and satellite delivered content. To access video content online, users were left with two mediocre choices: (1) waiting for their content to download (which did not support immediate viewing of live content and often required the user to select the quality desired: LOW, MEDIUM, or HIGH, which in turn determined how long the user had to wait before viewing); or (2) streaming live or recorded content that often was unreliable (pausing to "buffer") or only worked at low-resolution.

21.    The ABR Inventors knew that media streaming had not reached its full potential and that, through research and improvement, it was possible that streaming could rival the quality of cable and satellite delivered content. The current state-of-the-art was unacceptable prior to the inventions disclosed in the patents-in-suit. Often during playback, the streaming technologies did a poor job selecting the video quality / resolution that the network bandwidth and reliability could support. Most commercial systems, from companies like RealNetworks, Adobe, Microsoft, or Apple, were proprietary implementations based on public Internet standards (RTP/RTSP). Common standards notwithstanding, the proprietary implementations were mutually incompatible. They were expensive to deploy by the Content Delivery Networks ("CDNs") and required many servers to scale to a large number of viewers. In addition, these technologies often required custom server architectures and routing IT configurations to penetrate Internet firewalls. The ABR Inventors recognized these shortcomings as an opportunity, and they developed a better solution.

22.     The ABR Patents' specifications detail the need for improved data transport in content streaming.  Users will generally choose streaming over downloading because "they tend to want to see or hear the media files instantaneously."  *See, e.g.*, '554 Patent, Exhibit D, at col. 1, ll. 66-67.  Unfortunately for protocols at the time, "[s]treaming offers the advantage of immediate access to the content but currently sacrifices quality compared with downloading a file of the same content."  *See, e.g.*, *id.* col. 2, lines 1-4.  The ABR Inventors observed that "a need exists for an [invention] that alleviates the problems of reliability, efficiency, and latency" encountered in currently available content streaming systems.  *See, e.g.*, *id.* col. 2, ll. 59-61.

23.     To address these needs, the ABR Inventors came up with a novel solution:  HTTP-based Adaptive Bitrate Streaming.  ABR segments the full content file into smaller units ("streamlets") in multiple bitrates and delivers them over HTTP / TCP, the underlying protocols used for reliably transmitting data over the Internet.  The ABR Inventors' approach enables content delivery to adapt to the bandwidth available at any particular time, ensuring delivery of the highest possible quality content throughout the course of the stream.  The playback client device continuously observes the quality of a user's network connection and adjusts the requested quality of the streamed content.  The other RTP/RTSP-based technologies used a client / server architecture, where the server determined the bitrate to send to the client.  The other technologies also did not segment the content, usually delivering it as a continuous stream of bits or as a single large file.  Segmenting the content allows the playback device to easily change bitrates.  The result is that today, MOVE's patented ABR technology allows Internet users to stream content from across the world in real time at the highest possible quality.

24.     The ABR Patents' specifications describe how the MOVE inventors significantly improved the user viewing experience of streaming content data over a network:  "[A] need exists

for an apparatus, system, and method that alleviate the problems of reliability, efficiency, and latency [during data transport streaming over a network].  Additionally, such an apparatus, system, and method would offer instantaneous viewing along with the ability to fast forward, rewind, direct seek, and browse multiple streams." *See, e.g.*, *id.* col. 2, ll. 37–43.

25.     One unconventional but fundamental improvement described in the ABR Patents is the creation of sets of streamlets from the original large content file, where a plurality of streamlets in each set are aligned by starting time and duration (typically a few seconds) but have different bitrates.  Contiguous playback of the streamlets independently yields playback of the full content. The common alignment of the streamlets in each set allows a playback device to select one quality of streamlet from a particular set, and, as needed to adjust for changing bandwidth resources, to select a different quality of streamlet from the subsequent set.  When the bandwidth of the user's network is constrained, the client can select a lower bitrate to maintain playback continuity instead of "buffering."  This eliminates the need for users to download the full content file before beginning playback.  Segmenting the media into streamlets enables users to retrieve and enjoy content at the best appropriate bitrate possible as the media is streamed.  It is also well suited for live stream playback.

26.     Another non-routine and revolutionary improvement described in the ABR Patents is that the client (rather than the server) controls switching between different bitrates.  The benefits of using an intelligent client to make the decisions and switch between different bitrate streamlets are two-fold.  First, the client is in a better position to determine the appropriate streamlet by measuring the actual throughput of the network at its point of reception.  Second, moving the decision-making to the client effectively eliminates the need for a customized video server. Instead, a standard web server can be employed to host all the content's streamlets.  Streamlets are

requested by a client using the standard HTTP/TCP protocol—the web standard upon which the Internet is built.  Custom IT configurations are unnecessary as the file requests operate on the same "port 80" as all web server requests.  Access to the segmented content can be scaled exponentially through the use of standardized web caches.  Together, these benefits represent a vast reduction in operating and publishing costs versus RTP/RTSP-based systems.

27.     The ABR Inventors' improvements to streaming succeeded where others tried and failed.  During the late 1990s, established streaming companies, including RealNetworks, Adobe, Microsoft, and Apple, separately attempted to develop a successful multiple bitrate streaming platform by using proprietary implementations of the RTP/RTSP standards.  None of these systems succeeded at making bitrate switching consistent and none actually worked over the Internet.

**ABR PATENTS SELL FOR $45 MILLION**

28.     In December of 2010, EchoStar Advanced Technologies L.L.C., then a wholly owned subsidiary of EchoStar Corporation, spent $45 million to acquire MOVE and its ABR Patent portfolio.  Recognizing the ingenuity of MOVE's ABR technology and the value-added for its customers and their increasing interest in quality online content delivery, DISH affiliate DISH Digital Holding L.L.C. acquired EchoStar Advanced Technologies L.L.C. in connection with a joint venture with EchoStar Corporation in 2012.  EchoStar Advanced Technologies L.L.C., which was later renamed DISH Digital L.L.C., transferred the ABR Patents to EchoStar Technologies L.L.C. (a subsidiary of EchoStar Corporation) in 2014.  In February 2017, EchoStar Technologies L.L.C. became a subsidiary of DISH Network L.L.C., and in February 2018, was renamed DISH Technologies L.L.C.

29.     Two of the three ABR Inventors became and remain DISH employees.

30.     DISH and its affiliated companies are a leading provider of satellite TV and Internet streaming services, and serve approximately nine million subscribers in the United States.  It is a leading investor and innovator in infrastructure and technologies that will meet the personalized needs of its increasingly diverse pool of customers.  Since its founding, DISH and its affiliated companies have invested millions in research and development and acquisition of novel technologies that will resolve long-felt problems and needs across its industry.

31.     As the public continues to increasingly rely on the Internet for its informational and entertainment needs, DISH and its affiliated companies have dedicated great time and resources to improving the quality of streaming media.  The specific entities that implement and own the technology covered by MOVE's patent portfolio have undergone significant evolution.  These entities continue to improve upon ABR technology and advance reliable delivery of high-resolution content over the Internet.

32.     DISH's recent investments in ABR technology have already proven a success.  ABR is one of the primary contributors to Sling TV's popularity.  Sling TV L.L.C. is DISH and its affiliated companies' main Internet-delivered content provider, offering programming to numerous Internet streaming devices.  Since the launch of Sling TV in the beginning of 2015, Sling TV has grown to over two million subscribers, who are now receiving a live TV video experience comparable to cable or satellite.

**FUBO'S PRODUCTS AND SERVICES INFRINGE THE ABR PATENTS**

33.     fuboTV has been and is now directly infringing and/or indirectly infringing the ABR Patents.

34.     On information and belief, fuboTV is a distributor of content via the Internet.  Exhibit I at 7.  fuboTV makes, uses, sells, and offers for sale in the United States products and services

that infringe the ABR Patents, and continues to do so.  These infringing products and services include online streaming services operated by fuboTV operated through its fuboTV Application and the fuboTV Server(s) (collectively, "the Accused Streaming Services").  *Id.*

35.     fuboTV's unauthorized use of DISH's state-of-the-art streaming technology has established fuboTV as "#1 in Customer Satisfaction."  For example, a J.D. Power document states "fuboTV ranked #1 in Customer Satisfaction with Live TV Streaming according to the J.D. Power 2022 U.S. Television Service Provider Satisfaction Study." Exhibit J (J.D. Power Document, available at https://corporate.fubo.tv/23-US-JDP-BL_SPR-FuboTV-v2-022223.pdf).

36.     On information and belief, fuboTV's infringing streaming services have become known as "one of the best streaming services for anyone looking to have access to live sports without an actual cable subscription."  Exhibit K at 20 (available at https://www.tomsguide.com/us/best-streaming-video-services,review-2625.html).

**FUBO WAS AWARE OF THE ABR PATENTS WELL BEFORE THIS LAWSUIT**

37.     On May 29, 2019, DISH sent a letter to the New York address listed as the office of fuboTV's Chief Executive Officer.  Exhibit L.  This letter informed fuboTV of DISH's ABR patent portfolio including, among others, U.S. Patent Nos. 8,868,772 and 9,407,564, which are asserted in this lawsuit.  The May 29, 2019 letter also invited fuboTV to discuss taking a license from DISH. *Id.*

38.     On June 14, 2019, an attorney from the Wilson Sonsini Goodrich & Rosati law firm responded on fuboTV's behalf expressing that he was reviewing DISH's letter and would schedule a phone call in mid-July 2019 to discuss. Exhibit M.

39.     On July 1, 2019, fuboTV's attorney sent a letter to DISH to arrange a discussion regarding the matters addressed in DISH's May 30, 2019 letter. Exhibit N. Mr. Yoon expressed

that he wanted to ensure that all conversations would be confidential, subject to a Non-Disclosure Agreement ("NDA") and requesting that none of the discussions may be used for establishing a notice of a patent and/or a basis for willful infringement. *Id.*

40.    On September 2, 2020, DISH responded to the July 1, 2019 letter notifying Mr. Yoon of additional related and newly granted patents that would be included in the licensing agreement, including Patent Nos. 10,469,554 and 10,469,555.  Exhibit O.

41.    On September 9, 2020, Mr. Yoon reached out to DISH via email asking for availability the following week to discuss the September 2, 2020 letter and for a draft of the proposed NDA. Exhibit P. On September 11, 2020, DISH responded with a copy of the draft NDA and proposed to meet on Wednesday, September 16, 2020, between 4-6 PM Central.  Exhibit Q.

42.    On September 15, 2020, DISH did not hear back from Mr. Yoon and followed up via email to schedule a meeting on September 16, 2020. Exhibit R. Later that day, Mr. Yoon replied and requested that the meeting be delayed by a week until September 23, 2020 at 2 PM Pacific. Exhibit S.  That same day, DISH replied agreeing to meet on September 23, 2020. *Id.*

43.    On September 23, 2020, DISH received an email from Mr. Yoon with an attached letter indicating fuboTV's denial of the infringement allegations for the patents described in the prior letters. Exhibit T.  Later that day, DISH signed the draft NDA and sent it to Mr. Yoon for his signature. Exhibit U at 2.  On October 18, 2020, DISH sent a follow up email to remind Mr. Yoon to sign the NDA.  *Id.* at 1.  On October 20, 2020, Mr. Yoon countersigned the NDA and sent it back to DISH via email.  *Id.*

44.    On December 16, 2020, the parties had a phone call to discuss a potential licensing agreement and DISH sent presentation materials to Mr. Yoon later that night. Exhibit X at 1.

45.    On July 7, 2021, one hundred and twenty-seven days since the last communication from Mr. Yoon, DISH followed up with an email to schedule a call with Mr. Yoon.  Exhibit Y at 2.  With no response from Mr. Yoon, on July 9, 2021, DISH followed up with another email to schedule a call with Mr. Yoon.  Exhibit Y at 1.  Again, with no communication from Mr. Yoon, DISH sent an email on August 2, 2021 attaching a confidential licensing proposal.  *Id.*  On August 2, 2021, Mr. Yoon replied via email asking for a time to meet the following week.  Exhibit Z at 1.  That same day, DISH replied giving its availability to meet the following week.  *Id.*

46.    On August 11, 2021, after years of talks between DISH and fuboTV, fuboTV's counsel informed DISH that it no longer served as fuboTV's outside counsel with respect to DISH's licensing communications to fuboTV.  Exhibit AA.  Left with no further information as to who might represent fuboTV in the negotiations, DISH contacted fuboTV's then-in-house counsel to determine who, if anyone, could represent fuboTV in the ABR negotiations.  *Id*.

47.    After hearing nothing from fuboTV for another two years, on April 24, 2023, DISH sent an email to fuboTV's new Vice President and Assistant General Counsel to re-start licensing discussions.  Exhibit BB. Hearing no response for nearly three months, DISH sent the same Vice President and Assistant General Counsel exemplary claim charts showing how DISH's ABR patents read on fuboTV's streaming services on July 10, 2023. Exhibit CC at 1.  Two days later, fuboTV's Vice President and Assistant General Counsel acknowledged receipt of the charts and assured that fuboTV was reviewing them. *Id.*

48.    On September 5, 2023, fifty-seven days later, DISH received a letter from fuboTV's Chief Legal Officer stating that fuboTV did not believe it needed a license.  Exhibit DD.  After over four years of negotiation attempts to no avail, fuboTV continues to use DISH-owned technology in its streaming services without a license.

## CLAIMS FOR RELIEF

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,469,554

### DIRECT INFRINGEMENT

49. DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–48 of the Complaint as if fully set forth herein.

50. On information and belief, fuboTV directly infringes, literally and/or under the doctrine of equivalents, at least claim 16 of the '554 Patent, which recites:

An end user station to stream a live event video over a network from a server for playback of the video, the content player device comprising:

a processor;

a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to:

establish one or more network connections between the end user station and the server, wherein the server is configured to access at least one of a plurality of groups of streamlets;

wherein the live event video is encoded at a plurality of different bitrates to create a plurality of streams including at least a low quality stream, a medium quality stream, and a high quality stream, each of the low quality stream, the medium quality stream, and the high quality stream comprising a group of streamlets encoded at the same respective one of the different bitrates, each group comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the live event video;

wherein at least one of the low quality stream, the medium quality stream, and the high quality stream is encoded at a bit rate of no less than 600 kbps; and

wherein the first streamlets of each of the low quality stream, the medium quality stream and the high quality stream each has an equal playback duration and each of the first streamlets encodes the same portion of the live event video at a different one of the different bitrates;

select a specific one of the low quality stream, the medium quality stream, and the high quality stream based upon a determination by the end user station to select a higher or lower bitrate version of the streams;

place a streamlet request to the server over the one or more network connections for the first streamlet of the selected stream;

receive the requested first streamlet from the server via the one or more network connections; and

provide the received first streamlet for playback of the live event video.

The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection.  The Accused Streaming Services adapt requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection.  Exhibit EE to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.[1]

51.     Upon information and belief, fuboTV employees and/or agents test and use the Accused Streaming Services in the United States to directly infringe the '554 Patent.

52.     fuboTV possesses knowledge of, and is aware of, the '554 Patent, or became aware of this patent no later than the time of filing this lawsuit.

53.     fuboTV's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

54.     fuboTV's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, fuboTV will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

55.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–54 of the Complaint as if fully set forth herein.

---

[1] DISH notes that Exhibit EE-MM, *see infra*, are based exclusively on publicly available information, and without the benefit of this Court's claim construction.  Accordingly, for each Count below, DISH reserves the right to supplement, amend, or modify the analysis as warranted in light of additional facts, claim construction, or other developments. DISH further reserves the right to add additional claims as the case progresses.

56.     fuboTV is liable for inducing infringement of the '554 Patent under 35 U.S.C. § 271(b) by having knowledge of the '554 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '554 Patent, with specific intent, by its customers.

57.     Specifically, fuboTV actively induces infringement of the '554 Patent by, *inter alia*, training its customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to fuboTV's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '554 Patent.

58.     fuboTV's customers for the Accused Streaming Services directly infringe the '554 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

59.     For example, fuboTV actively induces infringement of the '554 Patent, because fuboTV has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use fuboTV's infringing Accused Streaming Services in the United States, and because fuboTV encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to fuboTV customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '554 Patent.  *See, e.g.*, Exhibit FF (writing articles on topics such as, "Get to know the fuboTV app on your Hisense TV" and "How many devices can I Stream from at the same time?" And "Can I stream Fubo from multiple locations?") (last visited August 8, 2023).

60.     On information and belief, fuboTV intends to, and continues to intend to, indirectly infringe the '554 Patent through inducement of the sale and use of the Accused Streaming Services.

61.     The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, fuboTV would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '554 Patent.

62.     On information and belief, despite knowing that its actions constituted induced infringement of the '554 Patent and/or despite knowing that there was a high likelihood that its actions constituted induced infringement of the patent, fuboTV nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

63.     fuboTV continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '554 Patent.

64.     fuboTV's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

65.     fuboTV's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, fuboTV will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

66.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–65 of the Complaint as if fully set forth herein.

67.     fuboTV is liable for contributory infringement of the '554 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '554 Patent, which fuboTV knows to be especially made and/or especially adapted for use in infringement of the '554 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

68.     fuboTV is liable for contributory infringement by having knowledge of the '554 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '554 Patent by its customers, including users and subscribers, who use the Accused Streaming Services.

69.     Specifically, fuboTV contributes to infringement of the '554 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to fuboTV's customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '554 Patent.  Those customers directly infringe the '554 Patent by using the Accused Streaming Services.

70.     For example, fuboTV is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, fuboTV customers, including users and subscribers, to directly infringe the '554 Patent by using the Accused Streaming Services in the United States.

71.     The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, fuboTV would have monitored developments relating to adaptive-rate content

streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '554 Patent.

72.     fuboTV continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '554 Patent.

73.     fuboTV's past and ongoing infringement of the '554 Patent has and will continue to irreparably harm DISH and cause DISH damages.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 11,677,798

### DIRECT INFRINGEMENT

74.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–73 of the Complaint as if fully set forth herein.

75.     On information and belief, fuboTV directly infringes, literally and/or under the doctrine of equivalents, at least claim 11 of the '798 Patent, which recites:

An end user station comprising:

a processor;

a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to:

establish one or more network connections between the end user station and at least one server, wherein the at least one server is configured to access at least one of a plurality of groups of streamlets of digital content;

wherein the digital content is encoded at a plurality of different bit rates to create a plurality of streams including at least a first bit rate stream, a second bit rate stream, and a third bit rate stream, wherein each of the first bit rate stream, the second bit rate stream, and the third bit rate stream comprises a group of streamlets encoded at the same respective one of the different bit rates, each group comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the digital content;

wherein at least one of the first bit rate stream, the second bit rate stream, and the third bit rate stream is encoded at a bit rate of no less than 600 kbps; and

> wherein the first streamlets of each of the first bit rate stream, the second bit rate stream and the third bit rate stream each has an equal playback duration and each of the first streamlets encodes the same portion of the digital content at a different one of the different bit rates;

> determine whether to select a higher or lower bit rate copy of the stream and based on that determination, select a specific one of the first bit rate stream, the second bit rate stream, and the third bit rate stream;

> place a first streamlet request to the at least one server over the one or more network connections for the first streamlet of the selected stream;

> receive the requested first streamlet from the at least one server via the one or more network connections; and

> provide the received first streamlet for output of the digital content to a presentation device.

The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection.  The Accused Streaming Services adapt their requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection.  Exhibit GG to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

76.   Upon information and belief, fuboTV employees and/or agents test and use the Accused Streaming Services in the United States to directly infringe the '798 Patent.

77.   fuboTV possesses knowledge of, and is aware of, the '798 Patent, or became aware of this patent no later than the time of filing this lawsuit.

78.   fuboTV's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

79.   fuboTV's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, fuboTV will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

80.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–79 of the Complaint as if fully set forth herein.

81.     fuboTV is liable for inducing infringement of the '798 Patent under 35 U.S.C. § 271(b) by having knowledge of the '798 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '798 Patent, with specific intent, by its customers.

82.     Specifically, fuboTV actively induces infringement of the '798 Patent by, *inter alia*, training its customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to fuboTV's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '798 Patent.

83.     fuboTV's customers for the Accused Streaming Services directly infringe the '798 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

84.     For example, fuboTV actively induces infringement of the '798 Patent, because fuboTV has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use fuboTV's infringing Accused Streaming Services in the United States, and because fuboTV encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to fuboTV customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '798 Patent. *See, e.g.*, Exhibit FF (writing articles on topics such as, "Get to know

the fuboTV app on your Hisense TV" and "How many devices can I Stream from at the same time?" And "Can I stream Fubo from multiple locations?" (last visited August 8, 2023).

85.    On information and belief, fuboTV intends to, and continues to intend to, indirectly infringe the '798 Patent through inducement of the sale and use of the Accused Streaming Services.

86.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of MOVE's patent portfolio. On information and belief, as a provider of streamed content, fuboTV would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '798 Patent.

87.    On information and belief, despite knowing that its actions constituted induced infringement of the '798 Patent and/or despite knowing that there was a high likelihood that its actions constituted induced infringement of the patent, fuboTV nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

88.    fuboTV continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '798 Patent.

89.    fuboTV's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

90.    fuboTV's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market. Upon information and belief, fuboTV will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

91.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–90 of the Complaint as if fully set forth herein.

92.     fuboTV is liable for contributory infringement of the '798 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '798 Patent, which fuboTV knows to be especially made and/or especially adapted for use in infringement of the '798 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

93.     fuboTV is liable for contributory infringement by having knowledge of the '798 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '798 Patent by its customers, including users and subscribers, who use the Accused Streaming Services.

94.     Specifically, fuboTV contributes to infringement of the '798 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to fuboTV's customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '798 Patent.  Those customers directly infringe the '798 Patent by using the Accused Streaming Services.

95.     For example, fuboTV is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, fuboTV customers, including users and subscribers, to directly infringe the '798 Patent by using the Accused Streaming Services in the United States.

96.     The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, fuboTV would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '798 Patent.

97.     fuboTV continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '798 Patent.

98.     fuboTV's past and ongoing infringement of the '798 Patent has and will continue to irreparably harm DISH and cause DISH damages.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,407,564

### DIRECT INFRINGEMENT

99.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–98 of the Complaint as if fully set forth herein.

100.     On information and belief, fuboTV directly infringes, literally and/or under the doctrine of equivalents, at least claim 8 of the '564 Patent, which recites:

> A method executable by an end user station to present rate-adaptive streams received via at least one transmission control protocol (TCP) connection with a server over a network, the method comprising;
>
> streaming, by a media player operating on the end user station, a video from the server via the at least one TCP connection over the network, wherein multiple different copies of the video encoded at different bit rates are stored as multiple sets of files on the server, wherein each of the files yields a different portion of the video on playback, wherein the files across the different copies yield the same portions of the video on playback, and wherein each of the files comprises a time index such that the files whose playback is the same portion of the video for each of the different copies have the same time index in relation to the beginning of the video, and wherein the streaming comprises:

requesting by the media player a plurality of sequential files of one of the copies from the server based on the time indexes;

automatically requesting by the media player from the server subsequent portions of the video by requesting for each such portion one of the files from one of the copies dependent upon successive determinations by the media player to shift the playback quality to a higher or lower quality one of the different copies, the automatically requesting including repeatedly generating a factor indicative of the current ability to sustain the streaming of the video using the files from different ones of the copies, wherein the factor relates to the performance of the network; and

making the successive determinations to shift the playback quality based on the factor to achieve continuous playback of the video using the files of the highest quality one of the copies determined sustainable at that time, wherein the making the successive determinations to shift comprises upshifting to a higher quality one of the different copies when the at least one factor is greater than a first threshold and downshifting to a lower quality one of the different copies when the at least one factor is less than a second threshold; and

presenting the video by playing back the requested media files with the media player on the end user station in order of ascending playback time.

The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection.  The Accused Streaming Services adapt requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection.  Exhibit HH to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

101.    Upon information and belief, fuboTV employees and/or agents test and use the Accused Streaming Services in the United States to directly infringe the '564 Patent.

102.    fuboTV possessed knowledge of, and was aware of, the '564 Patent, or became aware of this patent prior to the time of filing this lawsuit.

103.    fuboTV's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

104.    fuboTV's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, fuboTV will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

105.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–104 of the Complaint as if fully set forth herein.

106.    fuboTV is liable for inducing infringement of the '564 Patent under 35 U.S.C. § 271(b) by having knowledge of the '564 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '564 Patent, with specific intent, by its customers.

107.    Specifically, fuboTV actively induces infringement of the '564 Patent by, *inter alia*, training its customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to fuboTV's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '564 Patent.

108.    fuboTV's customers for the Accused Streaming Services directly infringe the '564 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

109.    For example, fuboTV actively induces infringement of the '564 Patent, because fuboTV has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use fuboTV's infringing Accused Streaming Services in the United States, and because fuboTV encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to fuboTV customers

including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '564 Patent. *See, e.g.*, Exhibit FF (writing articles on topics such as, "Get to know the fuboTV app on your Hisense TV" and "How many devices can I Stream from at the same time?" And "Can I stream Fubo from multiple locations?") (last visited August 8, 2023).

110.   On information and belief, fuboTV intends to, and continues to intend to, indirectly infringe the '564 Patent through inducement of the sale and use of the Accused Streaming Services.

111.   The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of MOVE's patent portfolio. On information and belief, as a provider of streamed content, fuboTV would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '564 Patent.

112.   On information and belief, despite knowing that its actions constituted induced infringement of the '564 Patent and/or despite knowing that there was a high likelihood that its actions constituted induced infringement of the patent, fuboTV nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

113.   fuboTV continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '564 Patent.

114.   fuboTV's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

115.    fuboTV's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, fuboTV will continue these infringing acts unless enjoined by this court.

### INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

116.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–115 of the Complaint as if fully set forth herein.

117.    fuboTV is liable for contributory infringement of the '564 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '564 Patent, which fuboTV knows to be especially made and/or especially adapted for use in infringement of the '564 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

118.    fuboTV is liable for contributory infringement by having knowledge of the '564 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '564 Patent by its customers, including users and subscribers, who use the Accused Streaming Services.

119.    Specifically, fuboTV contributes to infringement of the '564 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to fuboTV's customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '564 Patent.  Those customers directly infringe the '564 Patent by using the Accused Streaming Services.

120.    For example, fuboTV is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, fuboTV customers,

including users and subscribers, to directly infringe the '564 Patent by using the Accused Streaming Services in the United States.

121.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, fuboTV would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '564 Patent.

122.    fuboTV continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '564 Patent.

123.    fuboTV's past and ongoing infringement of the '564 Patent has and will continue to irreparably harm DISH and cause DISH damages.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 10,951,680

### DIRECT INFRINGEMENT

124.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–123 of the Complaint as if fully set forth herein.

125.    On information and belief, fuboTV directly infringes, literally and/or under the doctrine of equivalents, at least claim 14 of the '680 Patent, which recites:

> An end user station to stream a video over a network from a server for playback of the video, the content player device comprising:
>
> a processor;
>
> a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to:
>
> > establish one or more network connections between the end user station and the server, wherein the server is configured to access at least one of a plurality of groups of streamlets;

wherein the video is encoded at a plurality of different bitrates to create a plurality of streams including at least a low quality stream, a medium quality stream, and a high quality stream, each of the low quality stream, the medium quality stream, and the high quality stream comprising a group of streamlets encoded at the same respective one of the different bitrates, each group comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the video;

wherein at least one of the low quality stream, the medium quality stream, and the high quality stream is encoded at a bit rate of no less than 600 kbps; and wherein the first streamlets of each of the low quality stream, the medium quality stream and the high quality stream each has an equal playback duration and each of the first streamlets encodes the same portion of the video at a different one of the different bitrates;

select a specific one of the low quality stream, the medium quality stream, and the high quality stream based upon a determination by the end user station to select a higher or lower bitrate version of the streams;

place at least one virtual timeline request for at least one virtual times based on the selected one of the he low quality stream, the medium quality stream, and the high quality stream; and

receive the at least one virtual timeline.

The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection.  The Accused Streaming Services adapt their requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection.  Exhibit II to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

126.    Upon information and belief, fuboTV employees and/or agents test and use the Accused Streaming Services in the United States to directly infringe the '680 Patent.

127.    fuboTV possesses knowledge of, and is aware of, the '680 Patent, or became aware of this patent no later than the time of filing this lawsuit.

128.    fuboTV's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

129.    fuboTV's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, fuboTV will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

130.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–129 of the Complaint as if fully set forth herein.

131.    fuboTV is liable for inducing infringement of the '680 Patent under 35 U.S.C. § 271(b) by having knowledge of the '680 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '680 Patent, with specific intent, by its customers.

132.    Specifically, fuboTV actively induces infringement of the '680 Patent by, *inter alia*, training its customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to fuboTV's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '680 Patent.

133.    fuboTV's customers for the Accused Streaming Services directly infringe the '680 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

134.    For example, fuboTV actively induces infringement of the '680 Patent, because fuboTV has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use fuboTV's infringing Accused Streaming Services in the United States, and because fuboTV encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to fuboTV customers

including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '680 Patent. *See, e.g.*, Exhibit FF (writing articles on topics such as, "Get to know the fuboTV app on your Hisense TV" and "How many devices can I Stream from at the same time?" And "Can I stream Fubo from multiple locations?") (last visited August 8, 2023).

135.    On information and belief, fuboTV intends to, and continues to intend to, indirectly infringe the '680 Patent through inducement of the sale and use of the Accused Streaming Services.

136.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of MOVE's patent portfolio. On information and belief, as a provider of streamed content, fuboTV would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '680 Patent.

137.    On information and belief, despite knowing that its actions constituted induced infringement of the '680 Patent and/or despite knowing that there was a high likelihood that its actions constituted induced infringement of the patent, fuboTV nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

138.    fuboTV continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '680 Patent.

139.    fuboTV's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

140.    fuboTV's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, fuboTV will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

141.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–140 of the Complaint as if fully set forth herein.

142.    fuboTV is liable for contributory infringement of the '680 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '680 Patent, which fuboTV knows to be especially made and/or especially adapted for use in infringement of the '680 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

143.    fuboTV is liable for contributory infringement by having knowledge of the '680 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '680 Patent by its customers, including users and subscribers, who use the Accused Streaming Services.

144.    Specifically, fuboTV contributes to infringement of the '680 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to fuboTV's customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '680 Patent.  Those customers directly infringe the '680 Patent by using the Accused Streaming Services.

145.    For example, fuboTV is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, fuboTV customers,

including users and subscribers, to directly infringe the '680 Patent by using the Accused Streaming Services in the United States.

146.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, fuboTV would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '680 Patent.

147.    fuboTV continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '680 Patent.

148.    fuboTV's past and ongoing infringement of the '680 Patent has and will continue to irreparably harm DISH and cause DISH damages.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 10,469,555

## DIRECT INFRINGEMENT

149.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–148 of the Complaint as if fully set forth herein.

150.    On information and belief, fuboTV directly infringes, literally and/or under the doctrine of equivalents, at least claim 10 of the '555 Patent, which recites:

> A content player device to stream a video over a network from a server for playback of the video, the content player device comprising:
>
> a processor;
>
> a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to:
>
> establish one or more network connections between the client module and the server, wherein the server is configured to access at least one of a plurality of groups of streamlets;

wherein the video is encoded at a plurality of different bitrates to create a plurality of streams including at least a low quality stream, a medium quality stream, and a high quality stream, wherein each of the low quality stream, the medium quality stream, and the high quality stream comprises a streamlet that encodes the same portion of the video at a different one of the plurality of different bitrates;

wherein at least one of the low quality stream, medium quality stream, and high quality stream is encoded at a bit rate of no less than 600 kbps; and

wherein the streamlet encoding the same portion of the video in the low quality stream has an equal playback duration as the streamlet encoding the same portion of the video in the high quality streams;

select a specific one of the streams based upon a determination by the client module to select a higher or lower bitrate version of the streams;

place a streamlet request to the server over the one or more network connections for the selected stream;

receive the requested streamlets from the server via the one or more network connections; and

provide the received streamlets for playback of the video.

The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection. The Accused Streaming Services adapt requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection. Exhibit JJ to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

151. Upon information and belief, fuboTV employees and/or agents test and use the Accused Streaming Services in the United States to directly infringe the '555 Patent.

152. fuboTV possesses knowledge of, and is aware of, the '555 Patent, or became aware of this patent no later than the time of filing this lawsuit.

153. fuboTV's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

154.    fuboTV's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, fuboTV will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

155.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–154 of the Complaint as if fully set forth herein.

156.    fuboTV is liable for inducing infringement of the '555 Patent under 35 U.S.C. § 271(b) by having knowledge of the '555 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '555 Patent, with specific intent, by its customers.

157.    Specifically, fuboTV actively induces infringement of the '555 Patent by, *inter alia*, training its customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to fuboTV's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '555 Patent.

158.    fuboTV's customers for the Accused Streaming Services directly infringe the '555 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

159.    For example, fuboTV actively induces infringement of the '555 Patent, because fuboTV has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use fuboTV's infringing Accused Streaming Services in the United States, and because fuboTV encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to fuboTV customers

including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '555 Patent. *See, e.g.*, Exhibit FF (writing articles on topics such as, "Get to know the fuboTV app on your Hisense TV" and "How many devices can I Stream from at the same time?" And "Can I stream Fubo from multiple locations?") (last visited August 8, 2023).

160.   On information and belief, fuboTV intends to, and continues to intend to, indirectly infringe the '555 Patent through inducement of the sale and use of the Accused Streaming Services.

161.   The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of MOVE's patent portfolio. On information and belief, as a provider of streamed content, fuboTV would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '555 Patent.

162.   On information and belief, despite knowing that its actions constituted induced infringement of the '555 Patent and/or despite knowing that there was a high likelihood that its actions constituted induced infringement of the patent, fuboTV nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

163.   fuboTV continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '555 Patent.

164.   fuboTV's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

165.    fuboTV's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, fuboTV will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

166.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–165 of the Complaint as if fully set forth herein.

167.    fuboTV is liable for contributory infringement of the '555 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '555 Patent, which fuboTV knows to be especially made and/or especially adapted for use in infringement of the '555 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

168.    fuboTV is liable for contributory infringement by having knowledge of the '555 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '555 Patent by its customers, including users and subscribers, who use the Accused Streaming Services.

169.    Specifically, fuboTV contributes to infringement of the '555 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to fuboTV's customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '555 Patent.  Those customers directly infringe the '555 Patent by using the Accused Streaming Services.

170.    For example, fuboTV is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, fuboTV customers,

including users and subscribers, to directly infringe the '555 Patent by using the Accused Streaming Services in the United States.

171.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, fuboTV would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '555 Patent.

172.    fuboTV continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '555 Patent.

173.    fuboTV's past and ongoing infringement of the '555 Patent has and will continue to irreparably harm DISH and cause DISH damages.

## COUNT VI:  INFRINGEMENT OF U.S. PATENT NO. 8,868,772

### DIRECT INFRINGEMENT

174.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–173 of the Complaint as if fully set forth herein.

175.    On information and belief, fuboTV directly infringes, literally and/or under the doctrine of equivalents, at least claim 1 of the '772 Patent, which recites:

> A method for presenting rate-adaptive streams, the method comprising:
>
> streaming by a media player operating on an end user station a video from a set of one or more servers, wherein each of a plurality of different copies of the video encoded at different bit rates is stored as multiple files on the set of servers, wherein each of the multiple files yields a different portion of the video on playback, wherein the multiple files across the different copies yield the same portions of the video on playback, each of said files having a time index such that the files whose playback is the same portion of the video for each of the different copies have the same time index in relation to the beginning of the video, and wherein the streaming comprises:

requesting by the media player a plurality of sequential ones of the files of one of the copies from the set of servers over a plurality of Transmission Control Protocol (TCP) connections based on the time indexes;

automatically requesting by the media player from the set of servers over the plurality of TCP connections subsequent portions of the video by requesting for each such portion one of the files from one of the copies dependent upon successive determinations by the media player to shift the playback quality to a higher or lower quality one of the different copies, said automatically requesting including,

repeatedly generating a set of one or more factors indicative of the current ability to sustain the streaming of the video using the files from different ones of the copies, wherein the set of one or more factors relate to the performance of the network; and

making the successive determinations to shift the playback quality based on at least one of the set of factors to achieve continuous playback of the video using the files of the highest quality one of the copies determined sustainable at that time; and

presenting the video by playing back with the media player on the end user station the requested files in order of ascending playback time.

The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection.  The Accused Streaming Services adapt requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection.  Exhibit KK to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

176.   Upon information and belief, fuboTV employees and/or agents test and use the Accused Streaming Services in the United States to directly infringe the '772 Patent.

177.   fuboTV possesses knowledge of, and is aware of, the '772 Patent, or became aware of this patent no later than the time of filing this lawsuit.

178.   fuboTV's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

179.    fuboTV's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, fuboTV will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

180.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–179 of the Complaint as if fully set forth herein.

181.    fuboTV is liable for inducing infringement of the '772 Patent under 35 U.S.C. § 271(b) by having knowledge of the '772 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '772 Patent, with specific intent, by its customers.

182.    Specifically, fuboTV actively induces infringement of the '772 Patent by, *inter alia*, training its customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to fuboTV's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '772 Patent.

183.    fuboTV's customers for the Accused Streaming Services directly infringe the '772 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

184.    For example, fuboTV actively induces infringement of the '772 Patent, because fuboTV has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use fuboTV's infringing Accused Streaming Services in the United States, and because fuboTV encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to fuboTV customers

including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '772 Patent. *See, e.g.*, Exhibit FF (writing articles on topics such as, "Get to know the fuboTV app on your Hisense TV" and "How many devices can I Stream from at the same time?" And "Can I stream Fubo from multiple locations?") (last visited August 8, 2023).

185.    On information and belief, fuboTV intends to, and continues to intend to, indirectly infringe the '772 Patent through inducement of the sale and use of the Accused Streaming Services.

186.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of MOVE's patent portfolio. On information and belief, as a provider of streamed content, fuboTV would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '772 Patent.

187.    On information and belief, despite knowing that its actions constituted induced infringement of the '772 Patent and/or despite knowing that there was a high likelihood that its actions constituted induced infringement of the patent, fuboTV nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

188.    fuboTV continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '772 Patent.

189.    fuboTV's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

190.    fuboTV's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, fuboTV will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

191.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–190 of the Complaint as if fully set forth herein.

192.    fuboTV is liable for contributory infringement of the '772 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '772 Patent, which fuboTV knows to be especially made and/or especially adapted for use in infringement of the '772 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

193.    fuboTV is liable for contributory infringement by having knowledge of the '772 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '772 Patent by its customers, including users and subscribers, who use the Accused Streaming Services.

194.    Specifically, fuboTV contributes to infringement of the '772 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to fuboTV's customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '772 Patent.  Those customers directly infringe the '772 Patent by using the Accused Streaming Services.

195.    For example, fuboTV is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, fuboTV customers,

including users and subscribers, to directly infringe the '772 Patent by using the Accused Streaming Services in the United States.

196.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, fuboTV would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '772 Patent.

197.    fuboTV continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '772 Patent.

198.    fuboTV's past and ongoing infringement of the '772 Patent has and will continue to irreparably harm DISH and cause DISH damages.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 11,470,138

### DIRECT INFRINGEMENT

199.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–198 of the Complaint as if fully set forth herein.

200.    On information and belief, fuboTV directly infringes, literally and/or under the doctrine of equivalents, at least claim 14 of the '138 Patent, which recites:

> An end user station to stream a video over a network from a server for playback of the video, the end user station comprising:
>
> a processor;
>
> a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to:
>
> establish an internet connection between the end user station and the server, wherein the server is configured to access at least one of a plurality of groups of streamlets;

wherein the video is encoded at a plurality of different bitrates to create a plurality of streams including at least a low quality stream, a medium quality stream, and a high quality stream, each of the low quality stream, the medium quality stream, and the high quality stream comprising a group of streamlets encoded at the same respective one of the different bitrates, each group comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the video;

wherein at least one of the low quality stream, the medium quality stream, and the high quality stream is encoded at a bitrate of no less than 600 kbps; and wherein the first streamlets of each of the low quality stream, the medium quality stream and the high quality stream each has an equal playback duration and each of the first streamlets encodes the same portion of the video at a different one of the different bitrates;

select a specific one of the low quality stream, the medium quality stream, and the high quality stream based upon a determination by the end user station to select a higher or lower bitrate version of the streams;

place a streamlet request to the server over the internet connection for the first streamlet of the selected stream;

receive the requested first streamlet from the server via the internet connection; and

provide the received first streamlet for playback of the video.

The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection.  The Accused Streaming Services adapt requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection.  Exhibit LL to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

201.    Upon information and belief, fuboTV employees and/or agents test and use the Accused Streaming Services in the United States to directly infringe the '138 Patent.

202.    fuboTV possesses knowledge of, and is aware of, the '138 Patent, or became aware of this patent no later than the time of filing this lawsuit.

203.   fuboTV's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

204.   fuboTV's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, fuboTV will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

205.   DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–204 of the Complaint as if fully set forth herein.

206.   fuboTV is liable for inducing infringement of the '138 Patent under 35 U.S.C. § 271(b) by having knowledge of the '138 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '138 Patent, with specific intent, by its customers.

207.   Specifically, fuboTV actively induces infringement of the '138 Patent by, *inter alia*, training its customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to fuboTV's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '138 Patent.

208.   fuboTV's customers for the Accused Streaming Services directly infringe the '138 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

209.   For example, fuboTV actively induces infringement of the '138 Patent, because fuboTV has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use fuboTV's infringing Accused Streaming Services in the United States, and

because fuboTV encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to fuboTV customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '138 Patent.  *See, e.g.*, Exhibit FF (writing articles on topics such as, "Get to know the fuboTV app on your Hisense TV" and "How many devices can I Stream from at the same time?"  And "Can I stream Fubo from multiple locations?") (last visited August 8, 2023).

210.   On information and belief, fuboTV intends to, and continues to intend to, indirectly infringe the '138 Patent through inducement of the sale and use of the Accused Streaming Services.

211.   The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, fuboTV would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '138 Patent.

212.   On information and belief, despite knowing that its actions constituted induced infringement of the '138 Patent and/or despite knowing that there was a high likelihood that its actions constituted induced infringement of the patent, fuboTV nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

213.   fuboTV continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '138 Patent.

214.   fuboTV's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

215.    fuboTV's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, fuboTV will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

216.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–215 of the Complaint as if fully set forth herein.

217.    fuboTV is liable for contributory infringement of the '138 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '138 Patent, which fuboTV knows to be especially made and/or especially adapted for use in infringement of the '138 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

218.    fuboTV is liable for contributory infringement by having knowledge of the '138 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '138 Patent by its customers, including users and subscribers, who use the Accused Streaming Services.

219.    Specifically, fuboTV contributes to infringement of the '138 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to fuboTV's customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '138 Patent.  Those customers directly infringe the '138 Patent by using the Accused Streaming Services.

220.    For example, fuboTV is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, fuboTV customers,

including users and subscribers, to directly infringe the '138 Patent by using the Accused Streaming Services in the United States.

221.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, fuboTV would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '138 Patent.

222.    fuboTV continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '138 Patent.

223.    fuboTV's past and ongoing infringement of the '138 Patent has and will continue to irreparably harm DISH and cause DISH damages.

## COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 10,757,156

## DIRECT INFRINGEMENT

224.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-223 of the Complaint as if fully set forth herein.

225.    On information and belief, fuboTV directly infringes, literally and/or under the doctrine of equivalents, at least claim 1 of the '156 Patent, which recites:

> An apparatus for rendering a video that is adaptively received as a digital stream from a video server over a network, the apparatus comprising;
>
> a media player operating on the apparatus, wherein the media player is configured to stream the video from the video server via at least one transmission control protocol (TCP) connection over the network, wherein the video server stores multiple different copies of the video encoded at different bit rates as multiple sets of streamlets, wherein each of the streamlets yields a different portion of the video on playback, wherein the streamlets across the different copies yield the same portions of the video on playback, and wherein the streamlets in the different copies are aligned in time such that the streamlets that play back the

same portion of the video for the different copies each begin at the same playback time in relation to the beginning of the video, and wherein the media player streams the video by:

requesting sequential streamlets of one of the copies from the video server according to the playback times of the streamlets by transmitting hypertext transport protocol (HTTP) GET requests that identify the selected streamlets stored by the video server, wherein the sequential streamlets are selected by the media player from the based upon successive determinations to shift the playback quality to a higher or lower quality one of the different copies of the video;

repeatedly generating, by the media player, a factor relating to the performance of the network that is indicative of an ability to sustain the streaming of the video;

adapting the successive determinations to shift the playback quality based on the factor to achieve continuous playback of the video using the streamlets of the highest quality copy of the video that is determined to be sustainable at that time; and

presenting the video for playback by providing the requested streamlets in order of ascending start time.

The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection.  The Accused Streaming Services adapt requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection.  Exhibit MM to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

226.   Upon information and belief, fuboTV employees and/or agents test and use the Accused Streaming Services in the United States to directly infringe the '156 Patent.

227.   fuboTV possesses knowledge of, and is aware of, the '156 Patent, or became aware of this patent no later than the time of filing this lawsuit.

228.   fuboTV's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

229.    fuboTV's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, fuboTV will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

230.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–229 of the Complaint as if fully set forth herein.

231.    fuboTV is liable for inducing infringement of the '156 Patent under 35 U.S.C. § 271(b) by having knowledge of the '156 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '156 Patent, with specific intent, by its customers.

232.    Specifically, fuboTV actively induces infringement of the '156 Patent by, *inter alia*, training its customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to fuboTV's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '156 Patent.

233.    fuboTV's customers for the Accused Streaming Services directly infringe the '156 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

234.    For example, fuboTV actively induces infringement of the '156 Patent, because fuboTV has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use fuboTV's infringing Accused Streaming Services in the United States, and because fuboTV encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to fuboTV customers

including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '156 Patent. *See, e.g.*, Exhibit FF (writing articles on topics such as, "Get to know the fuboTV app on your Hisense TV" and "How many devices can I Stream from at the same time?" And "Can I stream Fubo from multiple locations?") (last visited August 8, 2023).

235.   On information and belief, fuboTV intends to, and continues to intend to, indirectly infringe the '156 Patent through inducement of the sale and use of the Accused Streaming Services.

236.   The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of MOVE's patent portfolio. On information and belief, as a provider of streamed content, fuboTV would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '156 Patent.

237.   On information and belief, despite knowing that its actions constituted induced infringement of the '156 Patent and/or despite knowing that there was a high likelihood that its actions constituted induced infringement of the patent, fuboTV nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

238.   fuboTV continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '156 Patent.

239.   fuboTV's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

240.     fuboTV's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, fuboTV will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

241.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–240 of the Complaint as if fully set forth herein.

242.     fuboTV is liable for contributory infringement of the '156 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '156 Patent, which fuboTV knows to be especially made and/or especially adapted for use in infringement of the '156 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

243.     fuboTV is liable for contributory infringement by having knowledge of the '156 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '156 Patent by its customers, including users and subscribers, who use the Accused Streaming Services.

244.     Specifically, fuboTV contributes to infringement of the '156 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to fuboTV's customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '156 Patent.  Those customers directly infringe the '156 Patent by using the Accused Streaming Services.

245.     For example, fuboTV is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, fuboTV customers,

including users and subscribers, to directly infringe the '156 Patent by using the Accused Streaming Services in the United States.

246.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, fuboTV would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '156 Patent.

247.    fuboTV continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '156 Patent.

248.    fuboTV's past and ongoing infringement of the '156 Patent has and will continue to irreparably harm DISH and cause DISH damages.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby request a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, DISH respectfully requests that this Court enter:

A.    A judgment in favor of DISH that fuboTV has infringed the ABR Patents, directly, willfully, jointly, and/or indirectly by way of inducing and/or contributing to the infringement of the ABR Patents;

B.    An order of this Court permanently enjoining fuboTV and its officers, directors, agents, affiliates, employees, divisions, branches, subsidiaries, parents, and all others in active concert therewith from infringing, including inducing the infringement of, or contributing to the infringement of, the ABR Patents;

C.      A judgment and order requiring fuboTV to pay DISH its damages, costs, expenses, and pre-judgment and post-judgment interest for fuboTV's infringement of the ABR Patents, as provided under 35 U.S.C. § 284;

D.      An accounting of lost sales not presented at trial and an award of additional damages for any such lost sales;

E.      A judgment and order finding this case exceptional under 35 U.S.C. § 285 and awarding DISH its costs, disbursements, and attorneys' fees in connection with this action; and

F.      Such other and further relief to which DISH may show itself to be entitled and/or as the Court may deem just and proper.

*Of Counsel:*                                    ASHBY & GEDDES

G. Hopkins Guy, III                          */s/ John G. Day*
BAKER BOTTS L.L.P.                     _____
1001 Page Mill Road                         John G. Day (#2403)
Building One, Suite 200                     Andrew C. Mayo (#5207)
Palo Alto, CA  94304-1007             500 Delaware Avenue, 8th Floor
(650) 739-7500                                 P.O. Box 1150
hop.guy@bakerbotts.com              Wilmington, DE  19899
                                                       (302) 654-1888
Ali Dhanani                                      jday@ashbygeddes.com
BAKER BOTTS L.L.P.                     amayo@ashbygeddes.com
One Shell Plaza
910 Louisiana Street                        *Attorneys for Plaintiffs*
Houston, TX  77002-4995
(713) 229-1234
ali.dhanani@bakerbotts.com

Kurt Pankratz
BAKER BOTTS L.L.P.
2001 Ross Ave., Suite 900
Dallas, TX  75201
(214) 953-6584
kurt.pankratz@bakerbotts.com

Dated:  September 6, 2023